**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMIE GEWIRTZ<br>7808 Ardmore Avenue<br>Wyndmoor, PA 19038,<br><br>and<br><br>EMILY GEWIRTZ STIEBEL<br>1255 25th Street, NW, Apt. 915<br>Washington, DC 20037<br><br>Plaintiffs,<br><br>v.<br><br>Opko Health, Inc.<br>4400 Biscayne Blvd.<br>Miami FL 33137<br><br>Defendant. | Civil Action No. ___________________<br><br>COMPLAINT |

Plaintiffs Jamie Gewirtz and Emily Gewirtz Stiebel, by and through their undersigned attorney, commence this civil action to obtain relief arising from the defendant's refusal to honor valid options to purchase the stock of defendant, and aver as follows:

**PARTIES**

1. Plaintiff, Jamie Gewirtz ("Gewirtz") is an individual residing at 7808 Ardmore Avenue, Wyndmoor, Pennsylvania 19038.

2. Plaintiff Emily Gewirtz Stiebel ("Stiebel") is an individual residing at 1255 25th Street, NW, Apt. 915,Washington, DC 20037.

3. Defendant Opko Health, Inc. ("Opko") is a Delaware corporation based at 4400 Biscayne Boulevard, Miami, Florida 33137. Opko is a public corporation engaged in the development and commercialization of biopharmaceutical products. The stock of Opko is traded on the New York Stock Exchange under the ticker OPK.

4. Non-party Acuity Pharmaceuticals, Inc. ("Acuity"), was an ophthalmic pharmaceutical company founded in 2002 and located at 3701 Market Street, Philadelphia, PA 19104. Acuity was acquired by Opko in 2011.

## JURISDICTION AND VENUE

5. Jurisdiction is proper under 28 U.S.C. §1332(a)(1). Plaintiffs and Defendant are citizens of different states, and the amount in controversy with respect to Plaintiffs' claims exceeds $75,000 exclusive of interest and costs.

6. Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to this claim occurred within this judicial District.

## FACTUAL ALLEGATIONS

7. This action arises out of a dispute over Plaintiffs' attempt to exercise 10,378 stock options to purchase the stock of Opko. These options were issued to Dr. Alan Gewirtz in equal halves in 2004 and 2006.

8. In 2002, Acuity bought certain of Dr. Gewirtz's patents.

9. As part of the sale transaction, Dr. Gewirtz received numerous option grants.

10. Dr. Gewirtz, now deceased, was during his lifetime the C. Willard Robinson Professor of Hematology-Oncology at the University of Pennsylvania School of Medicine. Dr. Gewirtz died on November 17, 2010 at the age of 61.

11. Plaintiffs are brother and sister, the children of Dr. Gewirtz, and the assignees of the options at issue here.

12. When Dr. Gewirtz died, he was the owner of certain Opko shares, as well as the options at issue here. His brother, Elliott Gewirtz became the executor of the estate of Dr. Gewirtz (the "Executor"), and in that capacity, informed Opko in early 2011 that Dr. Gewirtz had died, and instructed Opko to change the name of the holder of those shares.

13. In July 2014, pursuant to Opko's instructions and based upon Opko's books and records, Merrill Lynch sent a letter addressed to Dr. Gewirtz notifying him that he was the owner of a 2004 grant of options to purchase 5,189 shares of Opko stock, and that those options were about to expire.

14. The Executor timely sought to redeem the options, but Opko refused, claiming that the options expired according to their terms, because they were not redeemed within one year of the death of Dr. Gewirtz.

15. The Executor wrote back to Opko, requesting proof of this claim, but Opko ignored the request.

16. In response, the Executor, who lives in New York, wrote to his own Senator, Charles Schumer, explaining the situation and asking for the Senator's intervention. Senator Schumer contacted the SEC, and the SEC forwarded the letter to Merrill Lynch and asked for an explanation for what it called "the firm's apparent miscommunication about the expiration date."

17. Merrill Lynch wrote back to Senator Schumer with a copy to the SEC explaining that it was bound by Opko's decisions, because Opko held all of the relevant options agreements. Merrill Lynch also noted in its letter to the SEC that Opko's books contained an additional option grant to Dr. Gewirtz from 2006 for the purchase of another 5,189 shares. Opko similarly refused to honor this grant, because not redeemed within one year of Dr. Gewirtz's death. The letter from Merrill Lynch to Senator Schumer is attached hereto as Exhibit A.

18. The Executor forwarded Exhibit A on to Opko, again requesting the proof that the options had expired. This time Opko responded, and sent two documents, attached hereto as Exhibits B and C.

19. Exhibit B is entitled "Acuity Pharmaceuticals, Inc. 2003 Equity Incentive Plan". It contains the language which Opko deemed applicable to the options held by Dr. Gewirtz on page 11, paragraph 8.2(a).

20. Upon information and belief, Exhibit C is a copy of the original certificate for the 2006 grant to Dr. Gewirtz. It grants options to purchase 1000 shares of Acuity Pharmaceutical stock, now worth the equivalent 5,189 shares of Opko stock.

21. However, Exhibit B does not apply to Exhibit C, because Exhibit C states on its face that it is subject to the terms of Acuity Pharmaceutical's 2003 Equity Compensation Plan, not its Equity Incentive Plan.

22. The options granted to Dr. Gewirtz were compensatory, consideration for the purchase of one of Dr. Gewirtz's patents.

23. Opko's claim that the options have expired is therefore based upon language in a document that facially does not apply. In a letter dated July 8, 2015, Plaintiffs stated this, and requested that Opko produce the 2003 Equity Compensation Plan. Opko did not produce it. Instead it produced an amended and restated Equity Incentive Plan, attached hereto as Exhibit C.

24. Moreover, the notice received from Merrill Lynch in 2014 proves that Opko put in place a system for notifying its shareholders that options were about to expire.

25. The system failed Gewirtz and Stiebel, however, because Opko failed to update its books and records when it was timely notified that Dr. Gewirtz had died, this despite knowing that its notification system depended upon accurate record-keeping and that the death of a shareholder in many cases accelerated options expiration dates.

26. Had Opko updated its books and records when it was informed in 2011 that Dr. Gewirtz had died, then according to its own interpretation of the effect of death upon the expiration date, the estate of Dr. Gewirtz would have been notified in 2011, before the one-year

period had concluded, that it was the owner of options that were about to expire. See Exhibit A, page 2, second paragraph - "If Opko notified Merrill Lynch in 2010 or after that Dr. Alan Gewirtz had died and instructed Merrill Lynch to update the stock plan records, Merrill Lynch would have sent an "Approaching Expiration" notice to Dr. Alan Gewirtz's address in the stock plan records indicating that the stock options were to expire one year from the date of death."

## COUNT I: CLAIM FOR INJUNCTIVE RELIEF

27. Plaintiffs incorporate paragraphs 1 through 26 as though fully set forth.

28. Plaintiffs sought to redeem their options on a timely basis, in accordance with the notice issued by Merrill Lynch based upon Opko's books and records.

29. Opko refuses to redeem Plaintiffs' options, claiming they have expired, based upon language in Acuity's Equity Incentive Plan, which facially does not apply.

30. Opko has failed to provide a copy of the option plan that does apply, despite three requests, to prove that Plaintiffs' options have expired. Upon information and belief, Opko either cannot produce the Acuity Equity Compensation Plan to prove that the options have expired, or refuses to produce it because it will show that the options have not expired.

31. Plaintiffs have no adequate remedy at law.

## COUNT II:

## CLAIM FOR BREACH OF FIDUCIARY DUTY

32. Plaintiffs incorporate paragraphs 1 through 31 as though fully set forth.

33. Opko owes its securities holders the highest duty of good faith and loyalty.

34. Opko twice misrepresented the applicability of the 2003 Equity Incentive Plan to the options at issue here, which are facially governed by the 2003 Equity Compensation Plan.

35. Additionally, Opko failed to update its books and records when it was timely notified of the death of Dr. Gewirtz.

36. Opko's failure to update its books and records concerning the death of Dr. Gewirtz was particularly egregious, because it knew that in many cases, the death of a securities holder accelerated expiration dates.

37. Plaintiffs have been damaged by Opko's breach of fiduciary duty.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for relief and judgment, as follows:

(a) Entering judgment in Plaintiffs' favor on Counts I and II of this Complaint;

(b) Determining that Plaintiffs' 10,378 options to purchase Opko stock have not expired;

(c) Ordering Opko to honor and redeem Plaintiffs' 10,378 options;

(d) Awarding Plaintiffs the costs of suit and such other and further relief as the Court deems just.

Date: August 6, 2015

Stephen H. Schwartz
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107-3389
Phone: (215) 238-1700
Fax: (215) 238-1968

Attorney for Plaintiffs Jamie Gewirtz
and Emily Gewirtz Stiebel