IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMIE GEWIRTZ**, *et al.*,<br>            **Plaintiffs,** | :<br>:<br>: |
| v. | :      CIVIL ACTION NO. 15-4352 |
| **OPKO HEALTH, INC.**, *et al.*,<br>            **Defendants.** | :<br>:<br>: |

<u>MEMORANDUM OPINION</u>

**RUFE, J.**                                                                                        **FEBRUARY 2, 2017**

Before the Court is the Motion to Dismiss Plaintiffs' Second Amended Complaint by Defendants Opko Health, Inc. and Adam Logal. For the reasons that follow, Defendants' motion is granted in part, but Plaintiffs will be granted leave to file a Third Amended Complaint.

### I.   BACKGROUND

The Second Amended Complaint alleges the following facts, which are taken as true for the purposes of this motion.[1] Plaintiffs Jamie Gewirtz and Emily Gewirtz Stiebel are siblings who were assigned options to purchase stock in Defendant Opko from the estate of their father, Dr. Alan Gewirtz, after he passed away in 2010.[2] This lawsuit concerns Plaintiffs' hitherto unsuccessful attempts to exercise those options because of a miscommunication regarding their expiration date.

Dr. Gewirtz received the options in consideration for patents he sold to Acuity Pharmaceuticals in 2002, which was later acquired by Opko.[3] As part of the deal, Dr. Gewirtz

---

[1] Plaintiffs allege that the Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount in controversy exceeds $75,000.

[2] Doc. No. 17 (Second Amended Complaint) ¶¶ 9, 12, 14.

[3] *Id.* ¶¶ 6, 9, 10.

received 5,189 options to purchase Acuity stock in 2004, and another 5,189 options in 2006, none of which he exercised.[4]

After Dr. Gewirtz's death, his brother, Elliot Gewirtz, was appointed Executor of his estate, and he assigned the options to Plaintiffs and informed Opko that Dr. Gewirtz had passed away.[5] In July 2014, Merrill Lynch, which provides services for Opko's stock plans, wrote to Dr. Gewirtz notifying him that, based on a review of Opko's books and records, the 2004 options were about to expire.[6] On August 28, 2014, the Executor attempted to exercise the options, but was informed by Merrill Lynch that Opko would not allow it because the options had already expired.[7] The Executor then contacted Defendant Adam Logal, who holds several positions at Opko including Chief Financial Officer, requesting an explanation.[8] Mr. Logal replied: "the terms of these grants indicate that the grantee (or their beneficiary) have 1 year upon death to exercise the option. As your brother passed away in 2010, the award expired in 2011."[9]

The Executor requested documentation confirming this, but Mr. Logal did not respond.[10] The Executor, a New York resident, then sought the intervention of United States Senator Charles Schumer, who contacted the Securities and Exchange Commission ("SEC").[11] The SEC, in turn, asked Merrill Lynch for an explanation as to their miscommunication regarding the expiration date of the options.[12] Merrill Lynch explained by letter that it was bound by Opko's

---

[4] *Id.* ¶¶ 9, 11.

[5] *Id.* ¶¶ 15, 16; Ex. F (July 8, 2015 email from Elliot Gewirtz to Jamie Gewirtz confirming that Dr. Gewirtz's estate assigned Opko options to Plaintiffs).

[6] *Id.* ¶ 17.

[7] *Id.* ¶ 18.

[8] *Id.* ¶¶ 4, 19.

[9] *Id.* ¶ 19.

[10] *Id.* ¶ 20.

[11] *Id.* ¶ 21.

[12] *Id.*

decision not to allow the exercise of the options because Opko held the relevant option agreements.[13] Merrill Lynch noted that Opko's books showed the existence of 5,189 options granted to Dr. Gewirtz in 2006, which Opko also refused to allow the Executor to exercise on the ground that they had expired.[14]

The Executor sent the Merrill Lynch letter to Mr. Logal, and again requested proof that the options had expired.[15] Opko sent two documents in response: the "Acuity Pharmaceuticals, Inc. 2003 Equity Incentive Plan" and a copy of the certificate for the 2006 options, which stated that they were subject to a "2003 Equity Compensation Plan" but made no reference to the "Equity Incentive Plan."[16] Opko maintained that the 2006 certificate was subject to the Equity Incentive Plan, however, which included a provision stating that options would terminate one year after the death of the holder, and that all of Dr. Gewirtz's options had therefore expired in 2011.[17]

The Executor responded that under the plain terms of the 2006 certificate, it was subject to an Equity Compensation Plan, not the Equity Incentive Plan, and asked Opko to produce the Equity Compensation Plan.[18] Opko instead produced an "Amended and Restated Equity Incentive Plan," which contained a similar one-year termination period.[19]

---

[13] *Id.* ¶ 22; Ex. C (January 2, 2015 Letter from Merrill Lynch to Senator Schumer).

[14] *Id.*

[15] *Id.* ¶ 23.

[16] *Id.* ¶¶ 23-26; Ex. D (Acuity Pharmaceuticals, Inc. 2003 Equity Incentive Plan); Ex. E (2006 Option Certificate).

[17] *Id.* ¶ 28. The relevant language appears in Section 8.2(a) of the Equity Incentive Plan, which provides: "Any Options or SARs that were exercisable immediately prior to death . . . *will continue to be exercisable* . . . by the Participant's executor or administrator or by the person or persons to whom the Option or SAR is transferred by will or the laws of descent and distribution (in the case of death), *for the one-year period ending with the first anniversary of the Participant's death* . . . ." (emphasis added).

[18] *Id.* ¶ 30.

[19] *Id.*; Ex. G (Acuity Pharmaceuticals, Inc. 2003 Equity Incentive Plan (Amended and Restated as of November 8, 2004)). Because both the original and amended Equity Incentive Plans contain similar language regarding the

Plaintiffs filed suit on August 6, 2015, and amended their complaint in response to Defendants' first motion to dismiss. The Amended Complaint asserted a "claim for money damages" and two claims for breach of fiduciary duty, one against Mr. Logal and one against John Does 1-10, unnamed Opko officers and employees who allegedly failed to update Opko's books and records after Dr. Gewirtz passed away. Opko and Mr. Logal moved to dismiss the claims against them with prejudice, arguing both that Plaintiffs lacked standing and that they failed to state a claim. The Court granted the motion, finding that Plaintiffs had failed to establish standing. Plaintiffs then filed a Second Amended Complaint asserting the same claims, which Defendants again moved to dismiss with prejudice, this time arguing only that Plaintiffs failed to state a claim for relief.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" lacks enough substance to show that he is entitled to relief.[20] In determining whether a motion to dismiss should be granted, the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[21] Courts are not, however, bound to accept as true legal conclusions couched as factual allegations.[22] Something more than a mere *possibility* of a claim must be alleged; a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[23] The

---

termination of options, and neither party argues that they are materially different, the Court refers to them in the singular as the "Equity Incentive Plan."

[20] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

[21] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll.*, No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[22] *Twombly*, 550 U.S. at 555, 564.

[23] *Id.* at 570.

complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."[24]

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend should be "freely give[n] when justice so requires." "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility."[25] [D]elay alone is an insufficient ground to deny leave to amend," and the delay must be "undue" such that it places "an unwarranted burden on the court."[26] "The issue of prejudice requires [a] focus on the hardship to the defendants if the amendment were permitted," such as "additional discovery, cost, and preparation to defend against new facts or new theories."[27] Amendment is futile when "the complaint, as amended, would fail to state a claim upon which relief could be granted," and is "assessed using the same standard applied in the face of a motion to dismiss under Rule 12(b)(6)."[28]

### III. ANALYSIS

#### A. Plaintiffs' Claim for Money Damages (Count I)

Defendants argue primarily that Plaintiffs fail to state a claim because "money damages" are a form of relief, not a cause of action. Defendants also argue that to the extent Plaintiffs seek to plead a claim for breach of contract, they cannot do so because the options expired in 2011, and Defendants therefore did not breach any agreement by refusing to honor them in 2014.

Regarding Defendants' first argument, the Court is not persuaded that Plaintiffs' failure to style their first cause of action as one for "breach of contract" warrants dismissal. While it is

---

[24] *Id.* at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1984)) (internal quotation marks omitted).

[25] *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004) (citation omitted).

[26] *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (citations and internal quotation marks omitted).

[27] *Id.* (citation omitted).

[28] *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citation omitted).

true that money damages are a form of relief and not a cause of action,[29] the Second Amended Complaint makes clear that Plaintiffs seek to enforce their alleged contractual rights to exercise the options, and the Court will evaluate Plaintiffs' claim as one for breach of contract.[30]

Defendants also argue that Plaintiffs' first claim, however labeled, should be dismissed with prejudice because the options expired in 2011, before the Executor attempted to exercise them. Defendants' argument is based on Section 8(a)(2) of the Equity Incentive Plan, which states that Acuity options terminate one year after the death of the holder. Plaintiffs respond that the Equity Incentive Plan does not apply to their options because the certificate for the 2006 options references only an Equity Compensation Plan.

Defendants counter that the reference to the Equity Compensation Plan in the 2006 certificate is a typographical error, and that it is in fact subject to the Equity Incentive Plan.[31] In support, Defendants claim that during the parties' pre-suit communications, Opko was not able to identify an Equity Compensation Plan, and that the most plausible inference is that no Equity Compensation Plan exists.[32] Defendants also point to a 2007 Form S-8 that Opko filed with the SEC after it acquired Acuity, in which Opko disclosed that its common stock consisted of

---

[29] *See Addy v. Piedmonte*, Civil Action No. 3571-VCP, 2009 WL 707641, at *23 (Del. Ch. Mar. 18, 2009) ("Plaintiff requests equitable and other relief, in some cases alternatively, in the form of money damages . . . . [R]equests for such relief are not claims in and of themselves, but types of remedies dependent on the viability and outcome of the underlying causes of action, such as those for breach of contract . . . .").

The parties agree that Delaware law applies because Opko is incorporated in Delaware and this dispute involves its internal affairs. *See* Doc. No. 18-1 (Defendants' Memorandum of Law in Support of Motion to Dismiss) at 7 n.6; *see also Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 179 n.10 (3d Cir. 2005) (explaining that "the 'internal affairs doctrine' holds that courts look to the law of the state of incorporation to resolve issues involving the internal affairs of a corporation," and that Pennsylvania courts follow that doctrine) (citations omitted).

[30] *Cf. Transport Int'l Pool, Inc. v. Ross Stores, Inc.*, Civil Action No. 06-1812, 2009 WL 1033601, at *3 (E.D. Pa. Apr. 15, 2009) ("When a plaintiff pleads a contract according to its legal effect, the complaint does not need to resort to formulaic recitation of the elements of the alleged contract; rather, the complaint must allege facts sufficient to place the defendant on notice of the contract claim in such a way that the defendant can reasonably respond.").

[31] Doc. No. 22 (Defendants' Reply in Support of Motion to Dismiss) at 1-2.

[32] *Id.* at 2 n.1.

"10,638,221 shares subject to issuance upon the exercise of stock options outstanding under the Acuity Pharmaceuticals, Inc. 2003 Equity Incentive Plan[.]"[33] Defendants argue that the Form S-8 proves that Plaintiffs' options are subject to the Equity Incentive Plan, because if the Equity Compensation Plan existed, it too would have been disclosed to the SEC.

Defendants may be correct that the options are subject to the Equity Incentive Plan, but the Court is reluctant to so hold on a motion to dismiss, where all inferences must be drawn in favor of Plaintiffs. In particular, because the terms of the 2004 option certificate are not before the Court, it is not clear what, if any, restrictions apply to it. Regarding the 2006 options, the Court cannot accept Defendants' assertion that "Equity Compensation Plan" actually means "Equity Incentive Plan" before the parties have engaged in formal discovery.

The Form S-8 also does not resolve the issue.[34] The parties agree that the Court may take judicial notice of the Form S-8 because it is a matter of public record,[35] but as Plaintiffs note, SEC filings may not be considered for the truth of their contents on a motion to dismiss.[36] Thus,

---

[33] Doc. No. 22-1, Ex. A (Opko Health, Inc. 2007 Form S-8) at 2.

[34] Plaintiffs sought leave to file a sur-reply to make arguments concerning the Form S-8, but they were entitled to do so without leave of Court under the Court's Policies and Procedures, so the motion will be dismissed as moot.

[35] *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("SEC filings . . . are matters of public record of which the court can take judicial notice.") (citations omitted).

[36] *See, e.g.*, *Lupin Atlantis Holdings v. Ranbaxy Labs., Ltd.*, Civil Action No. 10-3897, 2011 WL 1540199, at *3 n.8 (E.D. Pa. Apr. 21, 2011) ("Our Court of Appeals has regularly held that a district court, in ruling on a motion to dismiss under to Rule 12(b)(6), can only consider materials outside the pleadings to establish the truth of their existence, not the truth of their contents."); *see also Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (explaining that courts may take judicial notice of SEC filings only to determine what those documents stated, not for their truth). Defendants point to *In re NAHC, Inc. Securities Litigation*, 306 F.3d 1314 (3d Cir. 2002), as contrary authority, but in that case, the District Court expressly did *not* consider the SEC documents at issue for the truth of the statements contained in them, but only for the fact that the statements were made, a ruling which the Third Circuit affirmed. *See In re NAHC, Inc. Secs. Litig.*, Civil Action No. 00-4020, 2001 WL 1241007, at *5 (E.D. Pa. Oct. 17, 2001) ("The offered [SEC] documents should be considered for their contents rather than for the truth of the contained statements."), *aff'd* 306 F.3d 1314. *NAHC* thus does not support Defendants' position.

the Court may not simply accept the Form S-8 as proof that Plaintiffs' options were subject to the Equity Incentive Plan, and dismissal is not warranted.[37]

### B. Plaintiffs' Claim for Breach of Fiduciary Duty Against Mr. Logal (Count II)

Mr. Logal argues that Plaintiffs' breach of fiduciary duty claim should be dismissed because Plaintiffs are only future stockholders, to whom no fiduciary duties are owed, and because Plaintiffs fail to allege that he breached any fiduciary duty. Plaintiffs respond that they were also Opko shareholders at all relevant times, and not merely option-holders, although this is not clear from the Second Amended Complaint.[38]

The elements of breach of fiduciary duty are: "(i) that a fiduciary duty exists; and (ii) that a fiduciary breached that duty."[39] Under Delaware law, "directors do not owe fiduciary duties to future stockholders."[40] Here, Plaintiffs only allege that Mr. Logal breached his duties with regard to the options, and do not explain how he breached any fiduciary duty to Opko's current shareholders. Thus, Plaintiffs' second claim will be dismissed without prejudice.

---

[37] The Form S-8 may show that Opko believed the options were subject only to the Equity Incentive Plan and was not aware of any Equity Compensation Plan, but it is not clear that is sufficient to foreclose Plaintiffs' breach of contract claim.

[38] Plaintiffs allege that their father owned Opko stock, which passed to his estate, but do not expressly state that they inherited the stock, or when they became Opko shareholders. *See* Doc. No. 17 ¶ 16. If Plaintiffs are, in fact, alleging that they inherited Opko stock, this would appear to grant them standing to bring a breach of fiduciary duty claim, but the question remains whether they can allege that Mr. Logal breached any fiduciary duty he owed to them in their capacity as current shareholders. *E.g.*, *Reis v. Hazelett Strip-Casting Corp.*, 28 A.3d 442, 478 (Del. Ch. 2011) ("[A] plaintiff who has been bequeathed shares in a corporation is an 'equitable owner' to whom fiduciary duties are owed and who has standing to sue for breach of fiduciary duty directly or derivatively.") (citations omitted).

[39] *Heller v. Kiernan*, No. Civ.A. 1484-K, 2002 WL 385545, at *3 (Del. Ch. Feb. 27, 2002) (citation omitted); *see also McGoldrick v. TruePosition, Inc.*, 623 F. Supp. 2d 619, 626 (E.D. Pa. 2009) ("Under Delaware law, courts have clearly stated that a fiduciary duty does not arise until there is an existing property right and that stock options . . . do not give rise to such an interest."); *Reis*, 28 A.3d at 478 ("Until the warrant or option is exercised, the underlying shares are not issued, and the warrant or option holder's rights are entirely contractual.") (citations omitted).

[40] *Corp. Prop. Assocs. 14 Inc. v. CHR Holding Corp.*, C.A. No. 3231-VCS, 2008 WL 963048, at *4 (Del. Ch. Apr. 10, 2008) (citation omitted).

### C. The Court Will Grant Leave to Amend

The Court has explained why leave to amend would not be futile, but Defendants also argue that amendment would prejudice them and cause undue delay.[41] However, Defendants offer no compelling showing of prejudice,[42] and "[n]othing in the record bespeaks the dilatory motive or repeated and unjustified failures to amend" that would warrant denial of leave based on undue delay.[43] As this is the first time the Court has addressed the sufficiency of Plaintiffs' claims, as opposed to their standing to bring them, Plaintiffs will be granted leave to file a Third Amended Complaint that addresses Defendants' arguments and the issues identified in this opinion.[44]

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion is granted as to Plaintiff's breach of fiduciary duty claim, but denied as to Plaintiff's first claim for relief and to the extent that Defendants seek dismissal with prejudice. An order will be issued.

---

[41] Doc. No. 18-1 at 9-10.

[42] *E.g.*, *Adams v. Gould Inc.*, 739 F.2d 858, 869 (3d Cir. 1984) (affirming district court's decision to grant leave to amend to assert new legal theories where Defendants asserted no particular prejudice aside from counsel fees).

[43] *See Arthur v. Maersk, Inc.*, 434 F.3d 196 (3d Cir. 2006) (affirming district court's decision to allow plaintiff leave to amend).

[44] Plaintiffs may also address whether they are alleging a violation of the implied duty of good faith and fair dealing, which they raise for the first time in their reply brief but do not mention in the Second Amended Complaint. Doc. No. 19 (Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss) at 8 n.6.